Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL PANNUCCI, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ECHELON CORPORATION, RONALD A. SEGE, ARMAS CLIFFORD MARKKULA, JR., ROBERT J. FINOCCHIO, JR.., ROBERT R. MAXFIELD, and BETSY RAFAEL,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Daniel Pannucci ("Plaintiff"), by and through his undersigned counsel, alleges the following upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is a class action brought on behalf of the public stockholders of Echelon Corporation ("Echelon" or the "Company") against Echelon and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Echelon will be acquired by Adesto Technologies Corporation ("Adesto") through its wholly owned subsidiary, Circuit Acquisition Corporation ("Merger Sub") (the "Proposed Transaction").

2. On June 29, 2018, Echelon and Adesto issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated June 28, 2018 (the "Merger Agreement") to sell Echelon to Adesto. Under the terms of the Merger Agreement, Echelon stockholders will be entitled to receive $8.50 per share in cash (the "Merger Consideration"). The acquisition price represents a total equity value of approximately $45 million, and a total enterprise value of about $30 million, after accounting for Echelon's cash and investments on its balance sheet at March 31, 2018, as well as expected transaction expenses of approximately $4 million.

3. On May 23, 2018, Echelon filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Echelon stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Echelon's financial projections, relied upon by Echelon's financial advisor Piper Jaffray & Co. ("Piper"); (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Piper; and (iii) the background process leading to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as

Echelon stockholders need such material information in order to cast a fully-informed vote or seek appraisal in connection with the Proposed Transaction.

4. In short, unless remedied, Echelon's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Echelon is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Echelon.

9. Defendant Echelon is a Delaware corporation with its principal executive offices located at 2901 Patrick Henry Drive, Santa Clara, California 95054. For 30 years Echelon has pioneered the development of open-standard networking platforms for connecting, monitoring and controlling devices in commercial and industrial applications. With more than 140 million connected devices installed worldwide, Echelon's solutions host a range of applications enabling customers to reduce energy and operational costs, improve safety and comfort, and create efficiencies through optimizing physical systems. Echelon is focusing today on two Internet of Things ("IoT") market areas: creating smart cities and smart campuses through connected outdoor lighting systems and enabling device makers to bring connected products to market faster via a range of IoT optimized embedded systems. Echelon's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "ELON."

10. Defendant Ronald A. Sege ("Sege") is Chairman of the Board and has been President, Chief Executive Officer ("CEO") and a director of Echelon since August 2010.

11. Defendant Armas Clifford Markkula, Jr. ("Markkula") is the founder of Echelon and has been a director of the Company since 1988.

12. Defendant Robert J. Finocchio, Jr., ("Finocchio") has been a director of the Company since 1999.

13. Defendant Robert R. Maxfield ("Maxfield") has been a director of the Company since 1989 and was President and CEO from November 2009 until August 2010.

14. Defendant Betsy Rafael ("Rafael") has been a director of the Company since November 2005.

15. Defendants Sege, Markkula, Finocchio, Maxfield, and Rafael are collectively referred to herein as the "Board" or the "Individual Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## OTHER RELEVANT ENTITIES

16. Adesto is a Delaware corporation with its headquarters located at 3600 Peterson Way, Santa Clara, California 95054. Adesto is a leading provider of innovative application-specific semiconductors for the IoT era. Its technology is used by more than 2,000 customers worldwide who are creating differentiated solutions across industrial, consumer, medical and communications markets. Adesto's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "IOTS."

17. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Adesto.

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Echelon common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

19. This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of July 27, 2018, there were approximately 4,542,310 shares of Echelon common stock outstanding. All members of the Class may be identified from records maintained by Echelon or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

20. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

      (a)    Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

      (b)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

      (c)    Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

21. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

22. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

23. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

24. Echelon, with its Silicon Valley based global headquarters in Santa Clara, California, and regional sales offices throughout North America, Europe, and Asia, makes its products available throughout the world. Echelon is a pioneer in developing distributed intelligence, open-standard control networking platforms for Industrial Internet of Things ("IIoT") applications and delivering elements necessary to design, install, monitor and control highly reliable, scalable and secure communities of devices. Echelon's vision is one of low-cost monitoring and control technology in every industrial electrical device in the world and complete vertical solutions in the

- 6 -
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

fastest growing market segments. With more than 140 million Echelon-powered devices shipped worldwide, Echelon helps its customers migrate existing legacy devices, and bring new devices and applications into a growing global Industrial Internet.

25. Starting in October 2017, the Company embarked on a sale process, assisted by its financial advisor Piper.

26. Notably, during the sale process the Company received a March 22, 2018 proposal from a party identified in the Proxy Statement as Party C with a per share price of $8.75, which the Company turned down.

27. On April 19, 2018, Adesto and Echelon signed a term sheet for Adesto to acquire Echelon for $8.50 per share.

28. At a June 28, 2018 Board meeting, Piper rendered its fairness opinion and the Board approved the Merger Agreement. Later that day, the Company entered into the Merger Agreement with Adesto.

29. On June 29, 2018, Echelon and Adesto issued a joint press release announcing the Proposed Transaction, which stated, in relevant part:

> SANTA CLARA, Calif., June 29, 2018 (GLOBE NEWSWIRE) -- Adesto Technologies (NASDAQ:IOTS), a leading provider of innovative application-specific semiconductors for the IoT era, and Echelon Corporation (NASDAQ:ELON) today announced a definitive agreement under which Adesto will acquire Echelon for $8.50 per share. Echelon is a pioneer in the development of open-standard networking platforms for connecting, monitoring and controlling devices in commercial and industrial applications. The acquisition price represents a total equity value of approximately $45 million, and a total enterprise value of about $30 million, after accounting for Echelon's cash and investments on its balance sheet at March 31, 2018, as well as expected transaction expenses of approximately $4 million.
>
> **Benefits to Adesto of completing the transaction include**:
>
> - Increases revenue and accelerates margin expansion opportunities
> - Expected to be accretive to EBITDA and non-GAAP earnings within the first 12 months
> - Significantly increases Served Available Market (SAM)

- Enhances technology assets and capabilities to include broad range of semiconductors, software and systems solutions for Industrial IoT (IIoT)

"With the acquisition of Echelon, we are continuing to advance toward our vision of becoming a significant player in semiconductor and communication systems for IoT markets, in particular industrial IoT," said Narbeh Derhacobian, CEO of Adesto. "Adesto started out providing application specific non-volatile memories for IoT, and we've continued to expand our memory portfolio with a wide range of differentiated devices. Through S3 Semiconductors, we added strong mixed-signal and RF ASIC capabilities. Following the acquisition of Echelon, we will be able to provide not only semiconductors, but also powerful software and deep systems and solutions expertise for industrial systems and enterprise automation, with a loyal customer base. We're excited about the potential this acquisition presents as Adesto enters its next phase of growth."

Ronald Sege, Chairman and CEO, Echelon Corp., said, "This transaction provides immediate and significant value to our stockholders. Our customers have become particularly excited about our strategy of helping them embrace our estimated 140 million installed LON-powered devices, extend them with new technologies and enhance them with cloud-based analytics to achieve better business outcomes across a variety of applications including smart buildings, smart manufacturing and smart lighting. The combination of Adesto and Echelon promises to accelerate this growth strategy through expected synergies in product, engineering, sales, marketing and service. We look forward to working closely with the Adesto team to ensure a smooth transition and complete the transaction as quickly as possible."

The transaction is subject to customary closing conditions, including approval by Echelon's stockholders. Adesto expects the transaction to close in the third calendar quarter of 2018, after which time Echelon will become a business unit within Adesto.

Adesto expects to finance the transaction through a combination of existing cash and equity and/or debt. Adesto today issued a separate announcement regarding its financing plans.

Canaccord Genuity is serving as financial advisor to Adesto, and Fenwick and West LLP is serving as legal counsel to Adesto. Piper Jaffray & Co is serving as financial advisor to Echelon and Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as legal counsel to Echelon.

**Insiders' Interests in the Proposed Transaction**

30.     Echelon insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Echelon.

- 8 -
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

31. Echelon's directors and executive officers stand to reap substantial financial benefits for securing the deal with Adesto. The following table summarizes the payments the Company's directors and executive officers stand to receive in connection with their equity awards upon consummation of the Proposed Transaction:

**Equity Interests of Echelon's Executive Officers and Non-Employee Directors**

| Name | Number of Shares Held (#)(1) | Value of Shares Held ($)(2) | Number of Shares Subject to In-the-Money Options (#)(3) | Value of In-the-Money Options ($)(4) | Number of Shares Subject to Company RSUs Accelerating upon the Merger (#)(5) | Value of Shares Subject to Company RSUs Accelerating upon the Merger ($)(6) | Total ($) |
|---|---|---|---|---|---|---|---|
| Ronald A. Sege | 50,792 | 431,732 | 45,000 | 147,600 | 132,799 (7) | 1,128,792 | 1,708,124 |
| Alicia Jayne Moore | 14,804 | 125,834 | 24,000 | 78,720 | 58,696 (8) | 498,916 | 703,470 |
| Christopher Jodoin | 13,906 | 118,201 | 21,000 | 68,880 | 55,439 (9) | 471,232 | 658,313 |
| Robert J. Finocchio, Jr. | 16,500 | 140,250 | 15,000 | 26,550 | — | — | 166,800 |
| Armas Clifford Markkula, Jr. | 177,703 | 1,510,476 | 15,000 | 26,550 | — | — | 1,537,026 |
| Robert R. Maxfield | 37,398 | 317,883 | 15,000 | 26,550 | — | — | 344,433 |
| Betsy Rafael | 1,000 | 8,500 | 15,000 | 26,550 | — | — | 35,050 |

32. Further, if they are terminated in connection with the Proposed Transaction, Echelon's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

**Golden Parachute Compensation**

| Name | Cash ($)(1) | Equity ($)(2)(3) | Perquisites/ Benefits ($)(4) | Total Payments ($)(5) |
|---|---|---|---|---|
| Ronald A. Sege | 1,200,000 | 1,134,942 | 47,120 | 2,382,062 |
| Alicia Jayne Moore | 367,827 | 502,196 | — | 870,023 |
| Christopher Jodoin | 312,827 | 474,102 | — | 786,929 |

**The Proxy Statement Contains Material Misstatements and Omissions**

33. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Echelon's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

34.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Echelon's financial projections, relied upon by Echelon's financial advisor Piper; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Piper; and (iii) the background process leading to the Proposed Transaction. Accordingly, Echelon stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Echelon's Financial Projections*

35.     The Proxy Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

36.     First, the Proxy Statement omits material information regarding Echelon management's financial projections.

37.     For example, the Proxy Statement sets forth:

> In connection with Echelon's strategic planning process, Echelon management prepared and provided to the Echelon Board various forward-looking financial information for fiscal years 2018 through 2022. This financial information was also made available to certain parties considering a transaction with Echelon, including Adesto, Party B, Party C, Party D and Party E. This financial information is collectively referred to as the "Management Original Forecasts."
>
> In connection with the preparation of the fairness opinion by Piper Jaffray, Echelon management updated the Management Original Forecasts solely to account for the passage of time and Echelon's business results since the preparation of the Management Original Forecasts. This financial information is collectively referred to as the "Management Refreshed Forecasts."

The Proxy Statement fails, however, to disclose the date the Management Original Forecasts were approved and the date the Management Refreshed Forecasts were created.  The Proxy Statement further fails to disclose why none of the top line financial metrics, (revenue, gross profit, operating income and net operating income after tax) changed from the Management Original Forecasts to the Management Refreshed Forecasts, even though the Management Refreshed Forecasts were

ostensibly created to account for Echelon's business results since the preparation of the Management Original Forecasts. Instead, the only financial metrics that were changed were the line items that directly impacted and decreased the Company's free cash flow figures (depreciation & amortization, capital expenditures, and working capital) and served to lower the implied per share value range of Piper's *Discounted Cash Flows Analysis*. Thus, it appears that the Management Refreshed Forecasts were engineered in order to fit the Merger Consideration into a range of fairness and not to account for Echelon's business results since the preparation of the Management Original Forecasts.

38. Additionally, the Proxy Statement states that in connection with its *Discounted Cash Flows Analysis* "Piper Jaffray calculated an estimated range of theoretical enterprise values for Echelon based on the net present value of (1) projected unlevered free cash flows from May 31, 2018, to December 31, 2022 . . . Proxy Statement at 48. The Proxy Statement, however, only discloses the Company's free cash flows from May 31, 2018, to December 31, 2022 and not the Company's **unlevered** free cash flows over this period. This information must be provided to Echelon stockholders for them to be able to properly evaluate the future prospects of Echelon.

39. The omission of this information renders the statements in the "Financial Forecasts" and "Fairness Opinion of Piper Jaffray" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Piper's Financial Analyses*

40. The Proxy Statement describes Piper's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Piper's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Echelon's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Piper's fairness opinion

- 11 -
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Echelon's stockholders.

41. With respect to Piper's *Discounted Cash Flows Analysis*, the Proxy Statement fails to disclose: (i) Echelon's projected unlevered free cash flows from May 31, 2018, to December 31, 2022; (ii) quantification of the inputs and the assumptions underlying the discount rates ranging from 25.0% to 35.0% used in the analysis; and (iii) Piper's basis for using a range of terminal revenue multiples from 0.5x to 1.7x to calculate the range of terminal values.

42. With respect to Piper's *Selected Publicly Companies Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected comparable companies observed by Piper in the analysis; and (ii) any benchmarking analyses for Echelon in relation to the selected companies analyzed by Piper.

43. With respect to Piper's *Selected M&A Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Piper in the analysis.

44. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

45. The omission of this information renders the statements in the "Fairness Opinion of Piper Jaffray" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

46.     The Proxy Statement omits material information relating to the sale process leading up to the Proposed Transaction.

47.     The Proxy Statement fails to expressly indicate whether Echelon entered into confidentiality agreements with prospective bidders that are still in effect and/or contain "don't ask, don't waive" standstill provisions that are presently precluding each and every one of these prospective bidders from making a topping bid for the Company.

48.     Notably, during the sale process, Echelon received a proposal from a party identified in the Proxy as Party C that contained a per share price of $8.75, higher than the Merger Consideration agreed to with Adesto.  The disclosure of the existence and terms of any confidentiality agreements Echelon entered into with any other party, including Party C who offered more per share than Adesto, is crucial to Echelon stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

49.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

50.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

# CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

51. Plaintiff repeats all previous allegations as if set forth in full.

52. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

53. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. The Proxy Statement misrepresented and/or omitted material facts, including material information about (i) Echelon's financial projections, relied upon by Echelon's financial advisor Piper; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Piper; and (iii) the background process leading to the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek appraisal. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

56. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

58. Plaintiff repeats all previous allegations as if set forth in full.

59. The Individual Defendants acted as controlling persons of Echelon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Echelon and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

62. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Echelon, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Echelon stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 16, 2018

**WEISSLAW LLP**
Joel E. Elkins

By: _____

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
    -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*